IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

LAWRENCE G. MILJKOVIC,           )   Civ. No. 09-00064 ACK-KSC
                                 )
          Plaintiff,             )
                                 )
     vs.                         )
                                 )
UNIVERSITY OF HAWAI'I,           )
PRESIDENT'S OFFICE; PATRICIA     )
HAMAMOTO; RAMSEY PEDERSON;       )
SHERRI MARIWAKI; NORMAN TAKEYA;  )
MICHAEL BARROS; MICHAEL ROTA;    )
ERIKA LOCRO; MARK SILLIMAN; GAIL )
AWAKUNI; FLOSSIE M. STEFFANY;    )
DR. JOHN BRUMMEL; JEFFERY CADIZ; )
APRIL CONNELLY; ROBERT SAMSON;   )
STEVE NAGATA; MARCUS HERESA;     )
CHRIS KUHINE,                    )
                                 )
          Defendants.            )
_____)


## ORDER GRANTING IN PART AND DENYING IN PART STEFFANY'S, HAMAMOTO AND STATE OF HAWAI'I, DEPARTMENT OF EDUCATION'S, BRUMMEL'S, SAMSON'S, AND CADIZ'S MOTIONS TO DISMISS

### BACKGROUND[1/]

Plaintiff Lawrence G. Miljkovic filed a complaint for employment discrimination on February 13, 2009, against the University of Hawai'i, President's Office, and David McClain, the President of the University of Hawai'i System.  Doc. No. 1.  On December 29, 2009, Plaintiff filed a second amended complaint

_____

[1/] The facts as recited in this Order are for the purpose of disposing of the instant motions and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

("SAC") against the University of Hawai'i ("University") and numerous other defendants, many of whom allegedly worked for the University of Hawai'i, Honolulu Community College ("HCC") or the HCC Construction Academy ("Construction Academy").[2] Doc. No. 66.[3]

According to the SAC, in August 2006, Plaintiff entered a two-year contract to work as a welding instructor for the Construction Academy and to teach and assist high school students. SAC Attach. ¶ 1. His supervisor was the coordinator of the Construction Academy, Michael Barros, a "Local." Id. By "Local," the SAC appears to refer to individuals who are from Hawai'i and are not Caucasian. See id. Plaintiff was initially assigned to Farrington High School, but, before the end of August 2006, was replaced by a "Local" carpentry teacher, Bob Miller,

---

[2] In addition to the University of Hawai'i, the SAC named the following defendants: DOE Superintendent of Schools, Patricia Hamamoto; Chancellor HCC, Ramsey Pederson; Chief Personnel Officer-HR HCC, Sherri Mariwaki; Acting Coordinator Construction Academy, Norman Takeya; Program Director Construction Academy, Michael Barros; Interim Chancellor HCC, Michael Rota; Interim Vice Chancellor HHC, Erika Locro; Jeffery Cadiz; Mark Silliman, Dean of Trades and Transportation HCC; Principal DOE, Gail Awakuni; Vice Principal DOE, Flossie Steffany; Principal DOE, Dr. [John] Brummel; April Connelly; Robert Samson; Steve Nagata; Marcus Heresa; and Chris Kuhine. Doc. No. 66. The SAC did not name David McClain or his designee, Edward Yuen, and these parties have been terminated.

[3] The Court denied Plaintiffs' requests for appointment of counsel on March 19, 2009, and January 27, 2010. See Doc. Nos. 14, 87. Although Plaintiff was proceeding pro se when he filed the SAC, he has since retained counsel. See Doc. Nos. 66, 150.

and was reassigned to McKinley High School.  <u>Id.</u> ¶¶ 4–5.  In
September 2006, he was reassigned back to Farrington, where he
worked with Miller, who engaged in unsafe practices, but was not
disciplined for his actions.  <u>Id.</u> ¶¶ 6–9.

In October 2006, Plaintiff was helping at the
Construction Academy.  <u>Id.</u> ¶ 10.  Barros's clerk treated
Plaintiff rudely and disrespectfully, verbally abusing him in
front of other instructors.  <u>Id.</u>  Plaintiff believed that the
clerk treated him in that fashion because of his race.  <u>Id.</u>  In
November 2006, Barros informed Plaintiff that he would not have a
welding curriculum, but Barros had secretly provided two other
welding instructors, both of whom were "Local," with alternate
positions.  <u>Id.</u> ¶ 17.

In January 2007, Barros provided Plaintiff with a
notice of termination because he had left students unattended, he
was not wanted at any of the schools, he was unable to teach a
full classroom, and the welding program was being discontinued.
<u>Id.</u> ¶¶ 26–31.  In April, Plaintiff filed a grievance regarding
his termination.  <u>Id.</u> ¶ 31.  The grievance was sustained for the
reason that the only evaluation that Plaintiff had received was
from the principal of Farrington, who had found Plaintiff's
performance satisfactory.  <u>Id.</u> ¶ 31.  The grievance was also
sustained on the basis that Barros, who had signed the
termination notice, had never personally observed Plaintiff's

performance.  Id.  Consequently, it was found that Barros had

attempted to terminate Plaintiff without just cause.  Id.

Following the grievance, Barros, frustrated that he

could not terminate Plaintiff, assigned Plaintiff to a one-year

training program in carpentry at Campbell High School.  Id. ¶ 34.

Plaintiff worked with another instructor there, Marcus Heresa,

who would, on occasion, make disparaging comments regarding

Caucasian people.  Id. ¶ 45.  Heresa and Robert Samson, the

"Local" teacher to whom Plaintiff was assigned, accused Plaintiff

of showing favoritism towards a Caucasian student.  Id.

Plaintiff denied the accusation.  Id.  Following a physical

altercation between Plaintiff and Heresa, Plaintiff was

reassigned to Mililani High School.  Id. ¶¶ 37, 49-50.

In December 2007, Plaintiff requested that John

Brummel, the principal of Mililani High School, fill out an

evaluation form.  Id. ¶ 54.  Plaintiff also gave Brummel the

student evaluations he had received, which were positive.  Id.

Thereafter, Plaintiff received a negative evaluation from Brummel

for leaving students unattended, permitting students to leave

early for lunch, letting them weld without shoes, and failing to

call in on days he was absent.  Id. ¶ 55.  Plaintiff denied the

accusations.  Id. ¶ 56.  In addition to the negative evaluation

from Brummel, Plaintiff also received negative evaluations from

the principal and students at Campbell High School for his work

4

there earlier in the year. Id. ¶¶ 58–60. The Campbell
principal's evaluation stated that Plaintiff had left students
unattended. Id. ¶ 60. Plaintiff denied responsibility. Id.
¶¶ 60–61. Plaintiff claims that the negative student evaluations
resulted from the fact that they were administered by Samson, the
"Local" teacher who had accused Plaintiff of favoring a Caucasian
student and had harbored hate and prejudice towards Plaintiff.
Id. ¶ 59. Plaintiff further claims that one of the student
evaluations had actually been filled out by Samson himself. Id.

In January 2008, Plaintiff filed a grievance in order
to obtain a waiver of the negative evaluations in his dossier at
the Construction Academy, because those evaluations would serve
as a significant obstacle if he were to try to renew his contract
with the academy later in the year. See id. ¶¶ 53, 63–64, 67.
He thereafter met with Barros, who said that he was going to
conduct an investigation regarding the evaluations, that
Plaintiff was suspended with pay, and that Plaintiff would hear
from him within thirty days. Id. ¶¶ 65–66. Barros also
presented Plaintiff with a letter informing him that he had been
placed on administrative leave with pay, that he was not
permitted on the Construction Academy campus, that he was not
allowed to communicate with any faculty from the Construction
Academy, and that he should make himself available to meet with
individuals related to the investigation. Id. ¶¶ 66. It appears

that, as part of Barros's investigation, he was tasked with determining whether the negative evaluations would be waived for purposes of processing Plaintiff's contract renewal application. See id. ¶¶ 63-69. After concluding his investigation, Barros found no cause for termination. Id. ¶ 68. He did not, however, notify Plaintiff of this finding, much less whether the negative evaluations would be considered in his application for contract renewal. See id. ¶¶ 67-68.

In May 2008, Plaintiff received a letter stating that the Construction Academy would not renew his contract because he had failed to submit a contract renewal form. Id. ¶ 67. At that point, Plaintiff had not turned in a renewal form because such a form includes an addendum that would have required the submission of the negative evaluations from the high school principals. Id. Plaintiff was unaware whether those negative evaluations would be waived from his dossier because he had not yet heard from Barros. Id. Plaintiff later learned that the investigation had been completed and that Barros had found no cause for termination. Id. ¶ 68. The SAC alleges that because of the discriminatory and retaliatory evaluations, Plaintiff was dissuaded from filing his contract renewal form until the investigation was complete. Id. ¶ 69. Plaintiff's contract expired in August 2008. Id.

The SAC asserts employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et

seq. ("Title VII"), alleging Plaintiff was terminated as a result of discrimination and/or retaliation and a hostile work environment. SAC at 4. The SAC also includes a litany of other violations, which presumably arise under state law. Id.[4]

On March 30, 2010, Plaintiff requested the Clerk of the Court enter default against twelve of the defendants "for failure to timely answer, plead or otherwise defend the [SAC]." Doc. Nos. 103-114. The Clerk of the Court entered default against each of these defendants on the same day. Id. However, Magistrate Judge Chang set aside these entries of default on June 24, 2010. Doc. No. 145. Judge Chang also directed Plaintiff by July 2, 2010, to "[p]rovide the United States Marshal with complete information about how to and where to effect personal service upon Defendants," provide the Marshal with copies of the summons and SAC, and complete the requisite forms. Doc. No. 146. Although Judge Chang subsequently allowed Plaintiff until September 15, 2010 to effect proper service upon Defendants, Plaintiff had failed to do so as of September 22, 2010. Doc.

_____

[4] The SAC states "[t]his action is brought pursuant to Title VII" and that the "acts complained of in this suit concern": termination of employment; race, color, national origin, and age discrimination; and "retaliation, harassment, desperate [sic] treatment, assault, hostile work environment, libel/slander, breach of contract, theft, property damage, public ridicule, malice, express malice, conspiracy, intentional deception, negligent misrepresentation, wrongful discharge, vicarious 'employer liability,' intentional emotional distress, negligent emotional distress, joint tortfeasor, fear of future harm." SAC at 4.

Nos. 149-50.

On October 7, 2010, motions to dismiss the SAC were filed by the following defendants (collectively, "Defendants"): (1) Flossie Steffany ("Steffany's Motion") (2) Patricia Hamamoto and State of Hawai'i, Department of Education ("Department's Motion"), (3) John Brummel ("Brummel's Motion"), (4) Robert Samson ("Samson's Motion"), and (5) Jeffery Cadiz ("Cadiz's Motion"). Doc. Nos. 169-73. On December 20, 2010, Plaintiff filed a memorandum in opposition to these motions. Doc. No. 177. On December 22, 2010, Defendants filed a reply in support of their motions to dismiss. Doc. No. 178. The Court held a hearing on these motions to dismiss on January 20, 2011.

**DISCUSSION**

I.     **Dismissal as to State of Hawai'i, Department of Education**

The Department's Motion argues that the SAC should be dismissed as to the State of Hawai'i, Department of Education ("Department") because the Department was not properly served, the Department was not Plaintiff's employer, and the state law claims are barred by the Eleventh Amendment.[5] The Court will address each argument in turn.

A.     **Improper Service**

Where a plaintiff fails to serve a defendant in

---

[5] The Department blanketly states that its motion to dismiss is made pursuant to Fed. R. Civ. P. 12.

accordance with Federal Rule of Civil Procedure ("FRCP") 4, and does not show good cause for such failure, the court "shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time." Fed. R. Civ. P. 4(m); see Stanley v. Goodwin, 475 F. Supp. 2d 1026, 1034-35 (D. Haw. 2006), aff'd, 262 F. App'x 786 (9th Cir. 2007). Although FRCP 4(m) provides that a defendant must be served within 120 days after a complaint is filed, "[d]istrict courts have broad discretion to extend time for service under [FRCP] 4(m)." Efaw v. Williams, 473 F.3d 1038, 1041 (9th Cir. 2007); Fed. R. Civ. P. 4(m); see also In re Sheehan, 253 F.3d 507, 513 (9th Cir. 2001). FRCP 4(m) "requires a district court to grant an extension of time when the plaintiff shows good cause for the delay," but it "permits the district court to grant an extension even in the absence of good cause." Efaw, 473 F.3d at 1040 (emphases in original). "In making extension decisions under [FRCP] 4(m) a district court may consider factors 'like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service.'" Id. at 1041 (quoting Troxell v. Fedders of N. Am., Inc., 160 F.3d 381, 383 (7th Cir. 1998)).

FRCP 4(j)(2) provides that a "state-created governmental organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the

manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). In turn, Hawai'i Rule of Civil Procedure ("HRCP") 4(d)(5) provides that service of process upon an agency of the State shall be made "by serving the State and by delivering a copy of the summons and of the complaint to such . . . agency." Haw. R. Civ. P. 4(d)(5); Munoz v. Chandler, 98 Hawai'i 80, 89, 42 P.3d 657, 666 (App. 2002) (noting that HRCP 4(d) requires both the state attorney general and the state agency to be served).

The Court agrees with the Department that Plaintiff failed to properly serve the Department and has not shown good cause for such failure. Department's Motion at 7-8. Indeed, the Department has yet to be properly served even though more than a year has passed since Plaintiff filed the SAC, which added the Department as a defendant and thus required the Department to be served within 120 days. See Fed. R. Civ. P. 4(m) (requiring a defendant to be "served within 120 days after the complaint is filed"); Bolden v. City of Topeka, 441 F.3d 1129, 1148 (10th Cir. 2006) ("[T]he 120-day period provided by [FRCP] 4(m) is not restarted by the filing of an amended complaint except as to those defendants newly added in the amended complaint.") (emphasis added); City of Merced v. Fields, 997 F. Supp. 1326, 1337-39 (E.D. Cal. 1998).

Plaintiff's argument that he served the Department

10

"through Defendant Patricia Hamamoto as the Superintendent of

Schools" is unpersuasive.  Opp'n at 5-6.  First, regardless of

whether Hamamoto was the Superintendent of Schools at the time of

the Department's alleged acts, Plaintiff is required under FRCP

4(j)(2) to serve process upon the Department's current, not

former, chief executive officer.  <u>Randell v. Cal. State Comp.</u>

<u>Ins. Fund</u>, No. CIV S-07-2760 JAM GGH PS, 2008 WL 2946557, at *2

(E.D. Cal. July 29, 2008) ("[P]ursuant to either the Federal

Rules or California procedure, plaintiff was required to serve

process . . . upon [the agency's] current - not former - chief

executive officer."), <u>adopted by</u> 2008 WL 4906332 (E.D. Cal. Nov.

13, 2008).  Plaintiff has not served the Department's current

chief executive officer.

Second, Plaintiff cannot rely on FRCP 4(j)(2)'s

provision that service may be effected in the manner prescribed

by state law.  <u>See</u> Fed. R. Civ. P. 4(j)(2)(B).  Plaintiff fails

to satisfy HRCP 4(d) for at least the reason that he has not

served the attorney general of Hawai'i.  <u>See</u> Haw. R. Civ. P.

4(d)(5); <u>Munoz</u>, 98 Hawai'i at 89, 42 P.3d at 666.[6]

Finally, although Plaintiff does not contend there is

good cause for his failure to properly serve the Department, the

---

[6] Moreover, similar to FRCP 4(j)(2), HRCP 4(d) likely
required Plaintiff to serve the Department's current, not former,
chief executive officer.  <u>See</u> Haw. R. Civ. P. 4(d)(4)-(5); <u>cf.</u>
<u>Randell</u>, 2008 WL 2946557 at *2.

11

Court recognizes that Plaintiff was proceeding pro se until September 22, 2010 (at the latest). <u>See</u> Doc. Nos. 149-50. This does not, however, constitute good cause for Plaintiff's failure to timely and properly serve the Department.

"Although there is a 'good cause' exception to [FRCP] 4(j), it applies only in limited circumstances, and inadvertent error or ignorance of governing rules alone will not excuse a litigant's failure to effect timely service." <u>Hamilton v. Endell</u>, 981 F.2d 1062, 1065 (9th Cir. 1992), <u>overruled in part on other grounds by</u> <u>Saucier v. Katz</u>, 533 U.S. 194 (2001). Moreover, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987). Plaintiff has been cautioned more than once that his failure to timely and properly effect service may result in dismissal, and he has been given ample additional time to effect service. <u>See, e.g.</u>, Doc. Nos. 145-46, 149-50; <u>cf.</u> <u>Miljkovic v. England</u>, Civ No. 05-00164 JMS-LEK, 2007 WL 2026362, at *1 (D. Haw. July 11, 2007) (dismissing Plaintiff's employment discrimination complaint against the Department of the Navy and its secretary for failure to properly serve these defendants), <u>motion for relief from judgment denied by</u> 2007 WL 2363312 (D. Haw. Aug. 16, 2007).

Because Plaintiff has failed to effect service on the Department as prescribed by FRCP 4, the Court will exercise its

broad discretion under FRCP 4(m) to direct Plaintiff to properly serve the Department with an amended complaint re-alleging Plaintiff's Title VII claims against the Department within thirty (30) days following the date this Order is filed. <u>See</u> Fed. R. Civ. P. 4(m); <u>Efaw</u>, 473 F.3d at 1040-41; <u>In re Sheehan</u>, 253 F.3d at 513.[7/]

In granting Plaintiff additional time to serve the Department, the Court is particularly mindful of the first <u>Efaw</u> factor, which considers whether dismissal without prejudice would result in a statute of limitations bar. <u>See</u> <u>Efaw</u>, 473 F.3d at 1040-41; <u>Lemoge v. United States</u>, 587 F.3d 1188, 1198 (9th Cir. 2009) ("Exercise of discretion to extend time to complete service is appropriate when, for example, a statute-of-limitations bar would operate to prevent re-filing of the action."). Here, Plaintiff's Title VII claims would likely be time-barred if they were dismissed without prejudice and thereafter re-filed.[8/]

_____

[7/] The Court will discuss why it grants Plaintiff leave to file an amended complaint in Section II.C., <u>infra</u>.

[8/] "Title VII provides that upon dismissing a charge of discrimination, the EEOC must notify the claimant and inform her that she has ninety days to bring a civil action." <u>Payan v. Aramark Mgmt. Services Ltd. P'ship</u>, 495 F.3d 1119, 1121 (9th Cir. 2007); 42 U.S.C. § 2000e-5(f)(1). "[T]his ninety-day period operates as a limitations period. If a litigant does not file suit within ninety days '[of] the date EEOC dismisses a claim,' then the action is time-barred." <u>Payan</u>, 495 F.3d at 1121 (citations omitted). Here, the EEOC appears to have mailed Plaintiff a right to sue letter on November 17, 2008, and Plaintiff filed his original complaint on February 13, 2009;
(continued...)

Moreover, although the Department has yet to be served, there is
no indication that the Department has been prejudiced by the
delay of service or that it lacks actual notice of the instant
lawsuit.  Cf. id. at 1040-42 (concluding that a district court
abused its discretion in extending the time for service under
FRCP 4(m), instead of dismissing the lawsuit, where a plaintiff
failed to serve a defendant for seven years, there was no
evidence the defendant knew about the action, and the defendant
was prejudiced because witnesses' memories had faded in the
interim and an eyewitness had died).

### B.   Allegations that Department Employed Plaintiff for Purposes of Title VII liability

The Department argues that the SAC should be dismissed
because it fails to allege sufficiently  that the Department was
Plaintiff's "employer" for purposes of Title VII.  Department's
Motion at 8; Reply at 6.  The Court is not persuaded.

Title VII prohibits an employer from discriminating
against an employee on the basis of his race, color, religion,
sex, or national origin.  42 U.S.C. § 2000e-2.  It also makes it
unlawful for an employer to retaliate against an employee because
he has taken an action to enforce his rights under Title VII.
Id. § 2000e-3.  Because Congress's objective was "'to achieve

---

[8/](...continued)
likely just within the ninety-day limitations period.  See Doc.
No. 1, Doc. No. 2 Attach. 1 at 1.

14

equality of employment opportunities,'" "there must be some connection with an employment relationship for Title VII protections to apply." <u>Lutcher v. Musicians Union Local 47</u>, 633 F.2d 880, 883 (9th Cir. 1980) (citation omitted). "However, courts have taken a liberal construction of the term 'employer' in order to carry out Title VII's purpose of eliminating discrimination and have applied differing theories in defining the term." <u>Horvath v. Dalton</u>, No. C-97-0441 MHP, 1999 WL 13714, at *4 (N.D. Cal. Jan. 7, 1999) (citing <u>Baker v. Stuart Broad. Co.</u>, 560 F.2d 389, 391 (8th Cir. 1977)), <u>aff'd</u>, 215 F.3d 1333 (9th Cir. 2000). In particular, an employer may be held responsible under Title VII pursuant to a "joint employer" theory of liability. <u>See</u> <u>EEOC v. Pac. Mar. Ass'n</u>, 351 F.3d 1270, 1275-77 (9th Cir. 2003).

For purposes of joint employer liability under Title VII, "[t]wo or more employers may be considered 'joint employers' if both employers control the terms and conditions of employment of the employee." <u>Id.</u> at 1275 (internal quotation marks and citations omitted). In determining joint employer status, the Ninth Circuit applies an "economic reality test" that "considers all factors relevant to the particular situation." <u>Id.</u> The Ninth Circuit has examined, for example, whether the alleged joint employer (1) supervised the employee, (2) had the power to hire and fire him, (3) had the power to discipline him, and (4)

supervised, monitored and/or controlled his work sites.  See id.
at 1277; Anderson v. Pac. Mar. Ass'n, 336 F.3d 924, 927 (9th Cir.
2003).

The Court finds that although the SAC does not
explicitly allege that Plaintiff was employed by the Department,
it alleges sufficiently that the Department may be responsible
under Title VII as a joint employer.[9/]  As Plaintiff argues, the
SAC alleges that the Department's "representatives were
Plaintiff's supervisors with immediate or higher authority over
Plaintiff."  Opp'n at 6.  Moreover, the SAC also alleges that the
Department's employees (1) evaluated Plaintiff, and the
evaluations were "vital" in determining whether Plaintiff was to
be terminated or to have his contract renewed; (2) disciplined
Plaintiff; and (3) supervised, monitored, and controlled
Plaintiff's classroom activities.  See, e.g., SAC Attach. ¶¶ 5,
9, 15, 31, 37-38, 51, 53-56, 58-60, 67.

In light of such allegations, the Court will not
dismiss the SAC's Title VII claims on the ground that they fail
to allege sufficiently that the Department was Plaintiff's

---

[9/] The Court is not persuaded, however, by Plaintiff's
contention that the Department "can be held liable under a
conspiracy claim in that they all acted in concert with the
[University] Defendants to deprive Plaintiff of his civil
rights."  Opp'n at 6.  As the Department points out, Plaintiff
has not asserted any conspiracy claims against it, and such
claims would likely be barred by the Eleventh Amendment in any
event.  See Reply at 5-6.

"employer." See EEOC, 351 F.3d at 1277; Anderson, 336 F.3d at 927; see also Brown v. Arizona, No. CV-09-2272-PHX-GMS, 2010 WL 396387, at *1 (D. Ariz. Jan. 28, 2010) ("Under employment discrimination statutes . . . the question of whether a plaintiff was jointly employed by two employers is an issue of fact that is typically addressed on summary judgment after the plaintiff has had the opportunity of conducting discovery.") (footnote and citations omitted).

### C. Eleventh Amendment Immunity Against State Law Claims

The Eleventh Amendment "precludes the adjudication of pendent state law claims against nonconsenting state defendants in federal courts." Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973-74 (9th Cir. 2004). "Absent a state's unequivocal consent, the Eleventh Amendment bars a federal court from entertaining a suit against that state, or one of its agencies or departments, based on state law." Hall v. Hawai'i, 791 F.2d 759, 761 (9th Cir. 1986). This principle of "sovereign immunity" applies to suits brought against a state by its own citizens as well as by citizens of other states. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).

The Court finds that neither Hawai'i nor the Department has consented to be sued in federal court for the state law claims asserted in the SAC. Accordingly, the Department is immune from suit for Plaintiff's state law claims. See

17

Department's Motion at 8-9. The Court will dismiss with prejudice these claims against the Department. See Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1298 (9th Cir. 1998) (noting that dismissal with prejudice is proper where "any amendment would be an exercise in futility, or where the amended [claim] would also be subject to dismissal" (citations omitted)).[10]

## II. Dismissal as to Hamamoto, Steffany, Brummel, Samson, and Cadiz

The instant motions to dismiss argue that the SAC should be dismissed as to Hamamoto, Steffany, Brummel, Samson, and Cadiz because individuals may not be sued under Title VII in their individual capacities, there is no diversity jurisdiction over the state law claims, and the Court should decline to assert supplemental jurisdiction over the state law claims.[11] The Court will address each argument in turn.

_____

[10] Plaintiff argues that the Eleventh Amendment does not require the SAC to be dismissed as to the Department. Opp'n at 6. Plaintiff is correct that the Eleventh Amendment does not bar Title VII claims against States and state officials. See Fitzpatrick v. Bitzer, 427 U.S. 445 (1976) (holding that Congress has abrogated Eleventh Amendment immunity with respect to Title VII claims). To the extent the Department suggests sovereign immunity requires the entire SAC, including the Title VII claims, to be dismissed as to the Department, Plaintiff's argument is well-taken. However, to the extent the Department contends only that the state claims are barred by the Eleventh Amendment, Plaintiff's argument is unavailing.

[11] The instant motions blanketly state that dismissal is appropriate as to Hamamoto, Steffany, Brummel, Samson, and Cadiz pursuant to Fed. R. Civ. P. 12.

## A. Individual-Capacity Liability Under Title VII

As Plaintiff recognizes, Title VII prohibits discriminatory practices by an "employer," but does not impose liability on individual employees, including managers and supervisors.  See 42 U.S.C. § 2000e-2; see also Pink v. Modoc Indian Health Project, Inc., 157 F.3d 1185, 1189 (9th Cir. 1998); Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587-88 (9th Cir. 1993); Black v. City & County of Honolulu, 112 F. Supp. 2d 1041, 1048 (D. Haw. 2000); Opp'n at 4.  Accordingly, individuals may not be sued under Title VII in their individual capacities. Plaintiff concedes that the SAC's Title VII claims against Hamamoto, Steffany, Brummel, Samson, and Cadiz should be dismissed.  Opp'n at 4.  The Court will thus dismiss with prejudice the Title VII claims against these defendants.  See Steckman, 143 F.3d at 1298 (noting that dismissal with prejudice is proper where "any amendment would be an exercise in futility, or where the amended [claim] would also be subject to dismissal" (citations omitted)).[12/]

---

[12/] Although Plaintiff states that the SAC names Hamamoto, Steffany, Brummel, Samson, and Cadiz in their "official capacities," he does not argue that these defendants are thereby subject to liability under Title VII in their official capacities.  Opp'n at 4.  This argument would fail in any event. First, Defendants Cadiz and Samson are not named in their official capacities.  Second, to the extent Defendants Hamamoto, Steffany, and Brummel are named in their "official capacities," they are named in their official capacities as agents of the Department.  Because the Department is already named as a

(continued...)

## B.   Diversity Jurisdiction as to State Law Claims

The instant motions argue that diversity jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1332, is lacking as to Hamamoto, Steffany, Brummel, Samson, and Cadiz because each of these defendants is a resident of Hawai'i, like Plaintiff.  Department's Motion at 5-6; Steffany's Motion at 4-5; Brummel's Motion at 4-5; Samson's Motion at 4-5; Cadiz's Motion at 4-5.  Plaintiff does not dispute that he has failed to establish diversity jurisdiction,[13/] and the Court finds that Plaintiff has not shown diversity jurisdiction is proper.  See Rilling v. Burlington N. R.R. Co., 909 F.2d 399, 400 (9th Cir. 1990) (holding that there was no diversity jurisdiction where the plaintiff made no allegations with respect to the citizenship of the defendant); Opp'n at 4.  Consequently, unless the Court exercises supplemental jurisdiction over Plaintiff's state law

_____

[12/](...continued)
defendant, Hamamoto, Steffany, and Brummel are "improper target[s]" for Plaintiff's Title VII claims.  Lam v. City and County of San Francisco, No. C 08-4702 PJH, 2010 WL 235081, at *9 (N.D. Cal. Jan. 21, 2010); see also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (citation omitted)).  Plaintiff presumably recognizes this when he cryptically argues only that "the SAC should be allowed to proceed against Plaintiff's employer."  Opp'n at 4.

[13/] Plaintiff instead argues that the Court should exercise supplemental jurisdiction over the pendent state law claims.  Opp'n at 4-5.  The Court addresses this argument in Section II.C, infra.

claims against Hamamoto, Steffany, Brummel, Samson, and Cadiz, such claims must be dismissed for lack of subject matter jurisdiction.

C.    Supplemental Jurisdiction

The parties dispute whether the Court should exercise supplemental jurisdiction over the SAC's state law claims. Supplemental jurisdiction over state law claims is governed by 28 U.S.C. § 1367.  Section 1367 provides that a district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  "Nonfederal claims are part of the same case as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." Tr. of Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint., Inc., 333 F.3d 923, 925 (9th Cir. 2003) (internal quotation marks and citation omitted).  A court may decline to exercise supplemental jurisdiction, even where it exists, if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional

circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c).

To begin with, the Court is not persuaded by Defendants' contention that because there are no viable Title VII claims against Hamamoto, Steffany, Brummel, Samson, and Cadiz, the Court should not exercise supplemental jurisdiction over the state law claims asserted against these defendants.  Department's Motion at 6; Steffany's Motion at 6; Brummel's Motion at 6; Samson's Motion at 5-6; Cadiz's Motion at 6; Reply at 3.  As this Court has explained:

> The doctrine of supplemental party jurisdiction allows a court to exercise jurisdiction over claims against parties who are not themselves party to the federal claims, so long as the state claims form part of the same case or controversy as the federal claims.  <u>See Mendoza v. Zirkle Fruit Co.</u>, 301 F.3d 1163, 1172-73 (9th Cir. 2002); <u>Desert Valley Landscape</u>, 333 F.3d at 925. In other words, a court may exercise supplemental subject matter jurisdiction over a party over whom there is no independent basis for federal court jurisdiction, provided that the claim derives from the same common nucleus of operative fact as the federal claim.

<u>Moore v. Nat'l City Mortgage Co.</u>, Civ. No. 09-00461 DAE-KSC, 2010 WL 914334, at *6 (D. Haw. Mar. 15, 2010); <u>see also Goodwin v. Seven-Up Bottling Co. of Phila.</u>, No. Civ. A. 96-2301, 1996 WL 601683, at *4 (E.D. Pa. Oct. 18, 1996) ("The district court's power to exercise supplemental jurisdiction is broad enough to support jurisdiction over a state claim against a person not a party to the primary jurisdiction-granting claim if there is a

22

common nucleus of operative fact with respect to the state claim against that person and the federal claim.") (citing <u>Dici v. Pennsylvania</u>, 91 F.3d 542, 553 (3d Cir. 1996) and <u>Exec. Software N. Am., Inc. v. U.S. Dist. Court</u>, 24 F.3d 1545, 1557 (9th Cir. 1994), <u>overruled in part on other grounds by</u> <u>Acri v. Varian Assocs., Inc.</u>, 114 F.3d 999 (9th Cir. 1997) (en banc)).

Here, Plaintiff has asserted Title VII claims against the Department, and the Court has granted Plaintiff additional time to serve the Department with an amended complaint re-alleging these claims. <u>See</u> Section I.A, <u>supra</u>. Additionally, the Court has yet to determine whether viable Title VII claims exist against the University and/or other named defendants. If there is a common nucleus of operative fact between Plaintiff's currently pending Title VII claims and the state law claims against Hamamoto, Steffany, Brummel, Samson, and Cadiz, supplemental jurisdiction over the state claims against these defendants may be appropriate.[14/]

That said, the Court will direct Plaintiff to file an amended complaint, within thirty (30) days following the date this Order is filed, that re-alleges any state law claims Plaintiff wishes to pursue against Hamamoto, Steffany, Brummel,

_____

[14/] Moreover, to the extent Plaintiff has asserted Title VII claims against Hamamoto, Steffany, Brummel, Samson, and/or Cadiz in their official capacities, supplemental jurisdiction may arguably be appropriate over the state law claims against these defendants in their official and/or personal capacities.

Samson, and/or Cadiz.

The Court finds that "it is impossible to determine which state law claims relate to the federal claim[] on which [the Court] ha[s] allowed [P]laintiff to proceed." <u>Horton v. Thompson</u>, No. 02-C-0470-C, 2002 WL 32345677, at *9 (W.D. Wis. Sept. 23, 2002); <u>see</u> Reply at 3.  The SAC lists – without description or citation to authority – more than twenty causes of action against Hamamoto, Steffany, Brummel, Samson, and Cadiz, and more than a dozen other defendants.  The Court declines Plaintiff's invitation to divine the bases of these claims and to thereafter ascertain which, if any, of these claims are sufficiently related to Plaintiff's currently pending Title VII claims to merit supplemental jurisdiction.  <u>See</u> <u>id.</u>; <u>cf.</u> <u>Blanck v. Exeter Sch. Dist.</u>, No. CIV-A-01-1402, 2002 WL 31247983, at *3 (E.D. Pa. Oct. 2, 2002) (dismissing pendent state claims because the plaintiff's failure to allege particular violations of the Pennsylvania Constitution made it "impossible to determine whether the federal and state claims are so related to one another that they form part of the same case or controversy").

Accordingly, Plaintiff's amended complaint must allege any state law claims against Hamamoto, Steffany, Brummel, Samson, and/or Cadiz in a manner that allows the Court to determine whether supplemental jurisdiction over these claims exists and whether it should be exercised.

24

Finally, the Court is inclined to agree with Defendants' argument that the state law claims "are not well pled," and "there is no indication that such state law claims are viable claims." Reply at 3. The Court thus advises Plaintiff that any state law claims re-alleged in the amended complaint must be alleged in a manner that provides "fair notice of what the claim[s] [are] and the grounds upon which [they] rest[]." Phillips v. Murdock, 543 F. Supp. 2d 1219, 1223 (D. Haw. 2008) (internal quotation marks and alterations omitted); see also Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); McHenry v. Renne, 84 F.3d 1172, 1178-80 (9th Cir. 1996) (affirming the dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery").[15/]

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants' motions to dismiss Plaintiff's Second Amended Complaint. In particular, the Court (1) DIRECTS

---

[15/] The Court notes, as a general matter, that it grants Plaintiff leave to file an amended complaint, rather than dismissing the SAC without prejudice, to avoid any statute of limitations bars that may otherwise result and because leave to amend should be freely given when justice so requires. See Fed. R. Civ. P. 15(a).

Plaintiff to properly serve the Department with an amended complaint re-alleging Plaintiff's Title VII claims against the Department within thirty (30) days following the date this Order is filed;[16/] (2) DISMISSES WITH PREJUDICE the state law claims against the Department; (3) DISMISSES WITH PREJUDICE the Title VII claims against Hamamoto, Steffany, Brummel, Samson, and Cadiz; and (4) DIRECTS Plaintiff to file an amended complaint, within thirty (30) days following the date this Order is filed, that re-alleges any state law claims Plaintiff wishes to pursue against Hamamoto, Steffany, Brummel, Samson, and/or Cadiz.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, January 21, 2011.



_Alan C. Kay_
Alan C. Kay
Sr. United States District Judge

Miljkovic v. Univ. of Hawai'i et al., Civ. No. 09-00064 ACK-KSC, Order Granting in Part and Denying in Part Steffany's, Hamamoto and State of Hawai'i, Department of Education's, Brummel's, Samson's, and Cadiz's Motions to Dismiss.

---

[16/] Plaintiff must also serve his amended complaint on any other parties that are named in that complaint.  The Court will allow Plaintiff thirty (30) days following the date this Order is filed to do so.